et al, Mr. Brown, Mr. Mulvihill, and Ms. Merrick. Mr. Brown, how are you feeling? I know you got sick the last scheduled argument. Your Honor, I am better, and I appreciate you asking about that. Thank you. Just no fun. You have whenever you're ready to start, and do you wish to reserve any time for rebuttal? Your Honor, I'll reserve three minutes for rebuttal, please. You certainly can have it. Go right ahead. Thank you. Good morning. May it please the Court, and opposing counsel, I'm Attorney Alex Brown. It's my pleasure to represent Tim Voyanich and his mother Carol Voyanich in today's appeal. The central issue in this case is the constitutionality of a pre-conviction taking of personal property in which that personal property is the subject of a pending and ongoing criminal case. However, before reaching that issue and similar constitutional issues on the merits, the district court decided to dismiss the Voyanich's action for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. Can I just ask you just a question at the outset? In connection with what you're bringing the suit on, why does the public nuisance statute matter here if the borough was acting under authority that was purportedly given to them by an ordinance, a local ordinance? Your Honor, the statute at issue, the criminal public misdemeanor, public nuisance misdemeanor statute, is important as a gauge of procedural due process dictates in Pennsylvania for criminal purposes, but it also provides us with guidelines for what the minimal due process requirements for a taking of property would be, or definitely would be. What the minimum deprivation of items would be, what types of process would be necessary for a determination to be made. That is an important guidepost for the federal courts, and obviously the federal constitution provides with minimal due process guidelines that can be supplemented by the state constitution. But the provisions within the public nuisance statute provide that baseline of due process that federal law would reflect. Was it under the public nuisance statute that the property was taken, or was it under some other provision? It's very difficult to figure that out from the briefings we got. Yes, Your Honor, and it is a very difficult issue to discern because of the way in which the items were taken. The items were not taken at the end of the criminal proceeding against Tim Voydon. Was it part of the criminal proceeding, or was it some other justification or statute or ordinance that permitted the taking? The taking occurred within the confines of the criminal case, but not at the point in which the criminal case reached the trial stage or judgment stage. Under the statute, they could then be taken? Only if there was a conviction and a judgment that was reached, and that wasn't reached until May of 2020, whereas the taking in this case, the permanent taking of my client's personal property items, occurred beginning in July of 2019, and it lasted through early fall of 2019. Now, your client was amenable to this idea that the boroughs were going to come in and remove these things, and he asked for 20 days to remove his things, and he got the 20 days. So I'm having a hard time understanding what his objection is when he got all the time he wanted and neglected to remove his things in time. The objection is that my client did not realize that there was going to be a permanent deprivation of his personal items. So he did not realize that those items were going to be destroyed, appropriated, scrapped by private property, by private contractors, I should say. And so that was not within the ambit of what the state court discussed and what was discussed at the status conference. This was not something that my client consented to, that there would be a permanent taking of those items. Now, we're here not on the substantive merits. Yours is a challenge to the Rooker-Feldman ground on which your client lost below, and most likely, if we were not to agree with that, you'd still have to go back for some further determination on that. You say someone loses in state court only if this claim is raised in the federal court or presented to and rejected by the state court, but where do you get that formulation from? I don't see the Supreme Court having really spelled this out very clearly. Yes, Your Honor, that's correct. The Supreme Court has not yet, in very much detail, spelled out what it means to lose in state court. The Third Circuit in Genesee Cox in 2018 did spell out that standard, which is, as you recited, that if the matters that are brought before the federal court were not adjudicated against my clients within state court, my clients would not be considered state court losers. And not just for Timothy, but his mother, Carol, who was not even charged with a crime in this matter, was not even a party to any matters in state court that are relevant to these claims that I'm bringing before the federal courts. Under Lance v. Dennis, there is no application of Rooker-Feldman to a party just on the basis that that party was purportedly in privity with a so-called state court loser. So for both of those reasons, and consulting with the Third Circuit's rule in Genesee Cox, my clients are not state court losers. So beyond the state court loser requirement, there's also an issue of whether the June 2019 status conference order constitutes a state court judgment, as defined by this circuit's precedent in the Mulholland case, which was decided last year. And it is not a state court judgment, because an interlocutory criminal court order that is entered long before the criminal court case consummates with a trial and a judgment. In this particular situation, there were ongoing criminal court proceedings. And as a result of that, under the Mulholland case, which held that a state court judgment does not occur unless, or I should say that a state court judgment occurs at the end of the state court proceedings, when they've either voluntarily terminated, or if they have matured into a decision of the highest state court of the particular jurisdiction. And in this situation, that didn't occur. There were still plenty of proceedings. Well, let's say you're right on that. Doesn't that just run you right into Heck versus Humphrey, that maybe this was not done in quite the right order, but then once there was a conviction, I don't know if you dispute that Timothy was convicted in state court of creating a public nuisance. If he's convicted of that, does he have any legal entitlement to the items that created the public nuisance? It looks to us like it's all part and parcel of the nuisance. So, Your Honor, no, the conviction of Tim for public nuisance does not preclude him from bringing claims related to a pre-conviction taking of those items in which those items had not been adjudicated as a nuisance at that time. Okay. Maybe it was done in the wrong order, but maybe it ripened. Okay. Is there any harm or foul? Do you have any basis for saying that even if the conviction had come before, that we couldn't properly bar this? I mean, I don't know whether we should reach that ourselves or save it for remand, but why wouldn't that be right on the merits, that if the conviction in fact had come in time before, that it would then bar a damages suit under Heck versus Humphrey? The reason, Your Honor, is that there was never a chance for the specific items at issue to be delineated between whether they were worthless garbage, whether they were nuisance items, or whether in fact they were items that weren't nuisances at all, just personal items lying around in an individual's yard. When we're dealing with Rooker-Feldman, at what point in the state proceeding does Rooker-Feldman look at the time that the federal proceeding was filed, at the time that the state proceeding terminated, if it's later than that? Which point in time are we looking at? The point of time of emphasis has to be when the federal lawsuit was filed in conjunction with whether the state court proceedings have ended. So those are the two general guideposts for determining whether the Rooker-Feldman timing requirement, which I believe you're referring to, Judge, would apply. So if the state court proceedings terminate after the federal lawsuit is filed, Rooker-Feldman does not apply? Cannot apply? Correct, Your Honor. Yes. Yes. I'd like to proceed at this point, unless there are other questions on the elements that we've discussed, to the issue of whether my clients, through their federal lawsuit, invited the district court to review and reject the judgment, or I'm sorry, the state court order that was issued in this matter. There was no review. Let me make a suggestion. Why don't we save that for rebuttal, and we'll give you plenty of time on rebuttal to deal with that. But the questions that we may have for your opposing counsel may tee that up pretty well. Very good, Your Honor. I'd like to discuss whether there are any other issues that should be decided by the Third Circuit right now besides the Rooker-Feldman issue, and there shouldn't be. There have been requests by the Smith and defendants to adjudicate this case on the merits based upon issue preclusion under Pennsylvania law, as well as the Heck doctrine. First of all, as a matter of appellate procedure, it's very clear that there has been no discussion or argument of the issue preclusion issue, as well as the Heck v. Humphrey issue. Heck we've dealt with in connection with Judge Bibas's question, and that issue preclusion, I think we can also, I think you may not even need to deal with that necessarily on rebuttal, because primarily this case does come down to Rooker-Feldman. Yes, Your Honor. All right. We'll get you back on rebuttal. We'll give you plenty of time then. Okay. Thank you, Your Honor. Thank you. Mr. Mulvihill? Sure, Your Honor. I had to unmute there. Can you hear me now? Yes, sir. Oh, great. All right. Your Honor, may it please the court, my name is Dennis Mulvihill, and I represent the South Huntington Township and three of the township supervisors. In my 10 minutes that has been allocated, I'd like to cover three issues. One is that Rooker-Feldman is not precluded because of the scope of the defendant's, or I'm sorry, the appellee's actions. And I want to argue or discuss that because in the reply brief before the Third Circuit, the appellant has placed great weight on making that argument. Second, I'd like to discuss the common pleas oral and written orders and why they constitute a judgment and a final judgment for purposes of Rooker-Feldman. And then third, that the Voyniches are both state court losers under the Rooker-Feldman doctrine. Well, let's see if that's the right place to start. And the first place is obviously is Rooker-Feldman. On prong one, that the federal plaintiff lost in federal court, now that might be satisfied as to Tim, but certainly not his mother, Carol. Well, I think it does include Carol in this case because of the relationship. They're joint owners of the land, and I would liken this to a single coin, Your Honor. It's a nickel. There are two sides to that coin, but it can only be held and buried by one person and spent one time. They own all of this property jointly. They own the real estate and they own the personality, that is, the junk that was removed. That is their allegation. There is no allegation that any of the property is separately owned by Mrs. Voynich. The only allegations are that it's jointly owned. And that was the position taken in the district court, and the district court dealt with that issue by saying you can't possibly separate the interest. They both own an entire interest in all of the removed property or personality as well as the real estate. So all of the claims that have been brought have been brought jointly and not separately, and there can be no claim. Only one of them. But the judgment was only against Tim. I mean, you know, our case in Marin from 2004 would support what you say, that the parties could be in privity. The trouble is that you've got the Supreme Court case and Lance going the other way and they get the final word. Well, pardon me, Your Honor. Go ahead. Go ahead. No, you go ahead. Well, Lance, in a footnote, I think it's footnote two, talks about that there may be circumstances and the court is not setting a bar or any definite statement on when a non-party may be bound by the Rooker-Feldman doctrine. And one of the examples they cite is when parties are in privity. Now, they only give one example, but it's set forth as an IE, as for example, not as the definitive singular. So I think the Supreme Court specifically held that they're not telling us in that case that there is no way that somebody who's not a defendant or party to an action. Here, the lower court at the conference, and this is the third conference this judge had held with these folks. Judge Abibas brought out that it looked as though there was some sort of consent or agreement. If you read the transcript of the status conference, the judge is trying to solve a very local problem that these folks had, and that is the Voyniches live in a residential area. There have been complaints about danger and junk buildup, according to the complaint, for four or five years, and the judge was trying to help get this cleaned up. So he brought some— Mr. Moldenhau, I have a different problem with your argument on prong one. I think we can all agree Rooker-Feldman is supposed to be a narrow doctrine. It's an exception to the jurisdiction statute that isn't spelled out, so we ought to limit it to the core rationale of Rooker and Feldman themselves. And the Supreme Court has never found anything else beyond those two cases to be barred. Your position on prong one is that a state court loser is a plaintiff who suffers some adverse result. Well, that would turn Rooker-Feldman into a broad abstention doctrine. I mean Mr. Voynich didn't specifically argue against this outcome here. And so I don't understand how it can be a bar on just any time someone doesn't like what goes on in state court if we're not to turn it into an abstention doctrine. Where in the Supreme Court's cases or our own cases do you see support for this broad conception of a state court loser, someone who has some kind of adverse effects? Well, I think last year's opinion out of the Third Circuit, the Malhan decision authored by Judge Hardiman gives us a guidance on that. We begin to talk about the practical finality approach. Well, Malhan rejected Rooker-Feldman. Well, it just simply said in that particular case there was not practical finality, that they hadn't reached a point in that case. In our case it's different. The judge made an order to clean up and the cleanup occurred. You're on finality now. You're on point two. My first question is one. What makes him a loser in the first place? Well, because he lost his property and because it was all taken and that's the essence of the claim that he's making. But did he specifically oppose? It sounds like he didn't even know these things were going to be taken until after the cleanup included not just the cars and junk but the tools. So I'm not sure how that makes him a loser on that precise point. Well, if in fact, as counsel says, his client didn't realize that the property was going to be taken, then he surely is a loser because then, as counsel says, he didn't go into that consenting. I think you, Judge Bibas, read that transcript maybe more the way I have. And, of course, neither of us are there. We're reading what a court reporter took down with different people talking. But the essence was you had a common pleas judge who was making a decision on the spot, and that decision resulted in an order. All right. We're not getting any clarity on point one. Let's go to point two. What makes it a judgment and what makes it final judgment when it's in the middle of adjudicating a nuisance case before there's a conviction or anything else? I don't even see a judgment. I don't see a document that's labeled a judgment, and it's before the proceedings have terminated. So what makes it a judgment? What makes it final? All right. What makes it a judgment in this case is that while it was an interlocutory order, it was fully executed and concluded. So the order was clean up the property. Don't start for 20 days. And then the cleanup began. And over the period of the next 30 to 60 days, the cleanup finished. The plaintiff's complaint says my claim began the day of that conference in June of 2018. That's the plaintiff's allegation in the complaint. Their claim began that day. They said their claim ripened from the time of that status conference in June of 18 until the cleanup was finished. And that's their allegation. So they clearly put that order and that determination by the Commonwealth Court in the crosshairs of their claim in this. What they're saying, how they were wronged, what they lost. They simply try to say, well, judge didn't have the authority to enter that order. Well, whether that's true or not, the fact is, and they call it an invalid order repeatedly. And as a result of the invalid order, according to their allegations, the cleanup occurred. So if we look at the complaint, we're looking at those allegations of an order that was executed, that was never appealed, that was never challenged. Can I just ask one question? Because it looks as if maybe the question is, were the injuries to Tim Boyinovitch caused by a state court judgment? Because it looks, look at the transcript that the person's appearing on behalf of the borough relying on a local ordinance or the public nuisance statute, not necessarily a court order. Well, that's why they came in that day. The court had held a series of like five different status conferences in this case before it ever went to trial. This was the third of them. And a reading of the transcript would suggest that there had been discussions before about how they're going to get the property cleaned up and how they're going to determine what the cost of that cleanup. But they certainly said they had the preexisting authority to seize the property under the ordinance, did they not? I don't know the answer to that. And I don't, I truly don't at this point, Judge, and I haven't made that determination.  And so the judge's decision here, not necessarily an ordinance, not necessarily the borough vote. This judge's directive at this hearing and then the written order that he entered was the order or judgment of the court as to clean up the property. Now, what the judge relied on, it's a little hard to tell. He makes his decision and then announces it unilaterally. This is what we're doing. I'm telling you, you have 20 days to get your stuff out of there or you're going to lose it. So, no, I think this is not a case about an ordinance as far as I'm concerned at this level, at this juncture. The Rooker-Feldman issue deals with a lower court order, which we think ripened into practical finality and then becoming a judgment for purposes of Rooker-Feldman under Malveon. So it is not a matter of what the municipal ordinance was. It's this common please judge saying, I'm ordering that they're going to go clean it up after 21 days or after 20 days. I'm looking at it looks in the argument before Judge Feliciani. The police chief who was unidentified in the transcript but later identified parties represented that he believed that the borough had the authority to remove the property without Tim's consent. I agree, Your Honor. That's what he said. But the court doesn't say that based on that, I'm deciding something. But regardless, it was the judge that makes the order. The representation of the arguments by the borough representative at that point was simply somebody sitting there saying, here's what we think. And he may well be right. I mean, there have been many JP hearings and magistrate decisions and judgments against these folks to clean it up. And I think what he's referring to is we've had judgments in the past in front of the JP fining him for not cleaning it up. He's paid off the fines, but then he never cleaned up the property. And that ultimately led to them having the district attorney's office of the Commonwealth of Pennsylvania prosecute him for a public nuisance. As you can see from the record, nobody wanted to put this man in jail or cause the problems. They wanted the property cleaned up. And so it's this determination by the common pleas judge at this conference and then the written order that he entered, I think it was the same day, ordering that the property is going to be cleaned up and he should get anything that he wants to keep out of there within the next 20 days. Can I ask you about prong four? Even if we agree with you that he's a state court loser and even if we treat this as a judgment and a final judgment, you know, we have to understand this as an appeal from that. But this action is not overturning that one. It's seeking damages. So how is this case like Rooker and Feldman, which were not seeking damages, they were seeking directly to overturn a judgment of a state court? Well, I don't think there was anything in the Rooker Feldman decisions themselves that said it can't. It can't be anything other than the request to overturn a state court. As the district court here said, he's effectively being asked to overturn the state court in order to hold the municipalities liable for doing what they did under the authority and direction of a state court judge's order. So the final prong of review and reject the cleanup order, this court, as the lower court decided, I have to go through that order. All roads to deciding this lawsuit that's been filed go through that order. Was that order legitimate? The plaintiff's complaint repeatedly says it was not a legitimate order. The bona fides of the order were improper. It was procedurally incorrect. It was constitutionally violent of his rights. But that has to do with the lower court and the judge's decision. The borough simply cleaned up the property pursuant to that order. And according to the complaint, there are several places where it was alleged that they cleaned up as a result of the order, as a directive of the order. They connect the order to the cleanup. And I think clearly that's what happened. So they are asking the court necessarily to go through that order, because how can you find a judge, the municipality's actions in taking the property and disposing of it without determining whether the order was appropriate or not? And the plaintiff in his complaint asked for that. Now, later on appeal in his brief and in the reply brief, he says, well, these decisions by the borough were really outside the scope of the order, so therefore the order doesn't bar us. Well, they weren't outside the scope of the order. And that argument was never made in the lower court, by the way. You can look very closely in the original complaint, in the motion to dismiss that was filed in briefing. In fact, we pointed out to the lower court in our motion to dismiss that there is no argument that the actions were outside the scope of the order. So I would say, Your Honor, in regard to element four to answer it directly. All roads go through this order, you cannot decide the liability and responsibility of the boroughs and the defendants in this case, without analyzing and rejecting the order or the efficacy of the order that authorized that. What if the plaintiffs had tried to appeal the order at that time? Wouldn't they have been told it was an interlocutory order and not right for appeal? I'm not under state practice in Pennsylvania. There are certain interlocutory orders that certainly can be appealed. They didn't even challenge the judge himself. They never said to the judge, we oppose what you're doing. Please, you can't take this property. As Judge Bibas points out, it would seem as though everybody was like, well, this is a good operation. The borough is paying for it. We'll worry about how we reimburse them later. And I point out to Your Honor, this case did go to trial this past year. He was found guilty by the crowd. There was no appeal from the conviction. He is now paying off the fine periodically. And I think this is all a matter of public record. So I'm not saying something that would be inappropriate. You can take judicial notice of this. There's never been a challenge to that order except this federal court lawsuit against the municipalities saying, well, we didn't object in state court. We didn't file an appeal in state court. We didn't do anything. In fact, we went to trial with the same judge. And we didn't object to him being the judge. And he found us guilty of a public nuisance. And he entered a $5,100 fine to be paid off over time and a two-year suspended sentence. But now we want to go to federal court for what all happened. We didn't challenge it in state court. We want to file a lawsuit against the municipalities and claim that this junk had value to it and we want you to pay us for it. And not only that, you violated a lot of our constitutional rights by operating or doing what you did under the color of authority of that order by the judge. I hope that answers your question, Your Honor. Let's hear from Ms. Merrick and then we'll get you back if we have any further questions. But I think we'll go to Ms. Merrick next. Thank you, Your Honor. Suzanne Merrick on behalf of Appalachia Smith-Dinburgh, Chief of Police Michael Natal, and Patrolman Rolf Marsico. May it please the court, we submit that, as was previously alluded to, there are alternative grounds for this court to affirm the district court's dismissal of the Vianich's claims. And I'd primarily like to focus on the application of the Heck v. Humphrey doctrine. Shouldn't we just remand to the district court to consider the Heck argument and the collateral stop all the issue preclusion argument? I mean, all that I see really being dealt with. Well, how much did the district court really deal with this? The court solely addressed the issue of the Brooker Feldman and its application. It did not consider. So shouldn't it, if it were to go back, shouldn't it get the first bite of the apple? Well, it doesn't have to, Your Honor, respectfully. I mean, these are facts which developed subsequent to the district court's orders of dismissal. And this court has jurisdiction and authority to take into consideration additional new adjudicative facts, which were not available to the parties at the time of the district court's disposition of the case. And the application of Heck v. Humphrey is so clear in this case. I mean, Mr. Vianich was convicted of maintaining a public nuisance. He was sentenced to pay restitution in the amount of $5,100, which represents the borough's costs incurred in following the Court of Common Pleas order cleanup order in the summer of 2019. So, Ms. Merrick, what I find frustrating here is we're not sure of how exactly to characterize the order as requiring, authorizing, prescribing. We're not sure on whether to characterize it as covering the tools or not. We're not sure whether to characterize the nuisance conviction as including the tools or just about the rusting vehicles and the tools being separate. So, those all seem to require remands because it might be that Heck precludes this if he was, in fact, convicted for having the tools there. But it might be that it doesn't if he had every right to have the tools there and wasn't convicted of it. And he can challenge independently that the baby should not have been removed with the bathwater. Well, Your Honor, the court's cleanup order provides that everything on the property is to be cleaned up except that which the plaintiff, Mr. Vianich, does not remove. So, whatever is left there. Everything. I mean, direct me to the language that makes it clear that nothing is to be left. Well, it says clean up the property. Okay. And I think the order would have to say with the exception, I mean, the court would have to spell out what's to be left. We could argue about what cleanup meant, but go on. Well, I mean, the order of conviction, the judgment of conviction establishes that the condition of the property was a nuisance as of the time of the cleanup. And that is something which plaintiff failed to challenge. So that's an established fact. And either through the doctrine of collateral estoppel or through Heck v. Humphrey, plaintiff cannot pursue these Section 1983 claims, which are premised upon that trash or that nuisance being items of value. Heck v. Humphrey, plaintiff's Section 1983 claims are premised upon the property, the personality on the property having value. And by bringing the Section 1983 claims, he's alleging that he was deprived of property, which was not a nuisance. Let me ask just a dumb logical question. How does an unconstitutional taking a property or an allegation of it in any way necessarily render Tim's conviction invalid? You mean a Fifth Amendment claim? No, you say Heck applies. How does an unconstitutional taking a property render Tim's conviction invalid? Well, property which is subject to the protections of the 14th Amendment due process clause has to be a property which is recognized by the state as the plaintiff having some type of property right in that property. And federal law provides that the state law must show that the plaintiff has a legitimate claim of entitlement. Let me phrase it another way. Can't we conclude that there was an unconstitutional taking a property, if that's what we conclude, without disturbing the finding that Tim Voinovich had some separate nuisance trash on his property? I respectfully, Your Honor, I don't see how you can. Here's how you could. The nuisance judgment does not require finding that the property is valueless. You can have valuable property create a nuisance. All right. So let's say there are some tools out there. If the tools were in his garage, there wouldn't be a nuisance and they could be worth something. It's only the fact that the tools are out on the lawn that even if the judgment covered them made them a nuisance. So let's assume the judgment covers the tools. It doesn't hold that the tools are valueless. It doesn't hold that he has no right to them. It just says if you didn't get them in time, we can remove them. But he's saying you didn't warn me clearly enough in time to get them. It wasn't clear from the judgment that I was supposed to get the tools out by then that you were going to take the tools as well. So why is there a conflict between a takings claim and a nuisance claim? Because if the property was taken and it forms the base and thereby forms the basis, it is the nuisance. Then any section 1983 claim which assigns value to the property which was taken and which formed the base and which was part of the nuisance contradicts or conflicts with that state court conviction. Maybe if he got unequivocal notice in time. But I take it that he is contesting whether in fact he was given enough notice that these items were going to be removed. Wouldn't he still have a property right to remove them before the nuisance judgment conviction and execution come in? I think at the time back in 2019, he had that right. But under Heck versus Humphrey, we're looking as to whether the 2020 conviction is impugned by virtue of his section 1983 claims. And all of that property which was cleaned up and which caused the borough to incur $5,100 in costs is deemed a nuisance by virtue of the 2020 conviction. And you can't retroactively parse out certain items from the basis for that conviction. The conviction establishes that everything that was that was taken into in 2019 was trash was a nuisance. And the category nuisance is broader than trash. And I think the conviction establishes the state had a right to remove it at the time it removed it. But he is saying he had a property right to take away some things that may not have been trash that may have been valuable before that time. And yet he wasn't given proper notice and procedure in time to remove it. Now, maybe he was, maybe he wasn't. That depends on construing the the order and what he was fairly warned of. But I'm not sure that's right. And if it's right, I'm not sure we can do it on appeal with the district court not having addressed the issue. So maybe let's assume you're right on the ultimate construction. Why is that something we should take up on appeal as opposed to leaving it to the district court? Why is it so clear that we need no remand here? Judge, it's not I haven't taken the position that it's absolutely mandatory or so clear that you have to address this issue. I just believe I submit that in the interest of efficiency and rather than prolonging the disposition of plaintiff's claims. And the fact that the Third Circuit has everything that it needs to decide these issues of the application of heck be Humphrey before it, that it is something that this court may decide. You certainly are. You certainly have the right to remand it and ask the district court to address these issues. But I just believe in the interest of efficiency and judicial economy, it makes sense for this court to address it. Any further questions of my colleagues? I have none. Then we'll go back to Mr. Brown for his rebuttal. Thank you very much, Your Honor. I wanted to address a couple of brief Rooker Feldman points and then get into the procedural propriety of considering these merits based issues on appeal without remand. So, first of all, on the causation issue, what does that order, the June 2019 status order cover? And what that order states is that my client, Tim Voynich, would have 20 days to clean up the property. But then it says after that, the municipalities could enter and clean up the outside of the property. That particular order, though, does not mandate that the municipalities perform that task. And that's very similar to a persuasive precedent from the 10th Circuit in Bowdoin, the city of Topeka, Kansas, where a state court entered an order regarding the demolition of a building, permitting a city to demolish the federal plaintiff's building. And the 10th Circuit held that the order that was entered by the state court did not cause the building to be destroyed because there was an independent action taken by a third party, which was the city, to actually go about and destroy that building. And the 11th Circuit has gone even further on the causation issue. The 11th Circuit has held that any actions that occur after an order is entered into in state court have to be separate from that state court order. So in other words, we're not supposed to do a Paul's graph type analysis where we look to a state court order and then we try to figure out at what point does the proximate causation end and that order's power of causation concludes as to superseding actions of third parties. Beyond that, the order itself that was issued by the state court never authorized private parties to enter the Voynich's property and sell that property or to appropriate it to other individuals. It just ordered that the property items be cleaned up. That doesn't necessarily lead to the conclusion that those property items were to be permanently taken away from my clients, particularly before a criminal conviction. There was also no request to review and reject by my clients via the federal court the state court's order. This court has held in the focus case that Rupert Feldman applies whenever there would be a consideration of a federal case that would be essentially the equivalent of an appeal. Why don't you go to the second issue that you want to talk about, whether we should remand to the district court to consider the issue preclusion argument and also the heck argument, particularly focused on collateral estoppel? Sure. So first of all, the issue of issue preclusion shouldn't be considered here because the record that was before the district court at the time that this order dismissing my client's case in the district court was entered. There's no indication whether in the public record in any state court or within the record that was attached to my complaint would have been able to cause the parties or the court to even want to raise issue preclusion or the heck bar because there was no conviction of Tim Voynich at the time that the case was before the district court. There was no way, no reasonable way that the district judge or any of the parties could have brought that issue up now specifically as the issue preclusion. And if this court were to go to the merits and consider issue preclusion under Pennsylvania law, it should not apply. And there's two primary reasons for that. First of all, under Pennsylvania's issue preclusion elements, there has to be a full and fair opportunity for the parties litigating the case to be able to fully ferret out the issues. So in this situation, you have a criminal court status conference. In a status conference, you go before a judge and the judge asks, what's the status? And you tell the judge about the progress of a criminal case, whether there might be some sort of settlement or a plea entered into. There's no indication here that there was any idea or any understanding by my clients that this would be conducted as sort of a criminal court preliminary injunction hearing. And they, within the criminal court procedures themselves, there's simply no opportunity to file counterclaims for unconstitutional actions. There's no opportunity for Carol Voynich to state her claims or to intervene in a criminal court action. The procedures only allow for the Commonwealth of Pennsylvania and the criminal defendant to be parties to that case. So issue preclusion doesn't apply simply because there's no procedural way for all of the claims and all the issues that need to be decided by the federal courts, that those things could not have been considered in any fashion by the criminal court, particularly in the context of a status conference. Thank you very much. Anything further from my colleagues? Nothing further. No. Okay. Thank you to all counsel for very well presented arguments and we'll take the matter under advisement.